IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : | |
| Plaintiff, | : : | |
| v. | : : : | CIVIL ACTION NO. 1:18-CV-05868-LMM |
| JOSEPH A. MEYER, JR., *et al.*, | : : : : | |
| Defendants. | : | |

**ORDER**

This case comes before the Court on the Securities and Exchange Commission's ("SEC") Motion for Remedies [242]. After due consideration, and with the benefit of a hearing, the Court enters the following Order.

**I. The SEC's requested remedies and Defendant Meyer's objections**

This case involves a multi-year scheme through which Defendant Statim Holdings, Inc. ("Statim") and its sole owner and president, Defendant Joseph A. Meyer, Jr., defrauded Arjun, L.P. ("Arjun" or "the Fund") and its investors. See generally Dkt. No. [1].[1] Arjun was an investment fund managed by Statim and

---

[1] For the purposes of the SEC's Motion for Remedies, Defendant Meyer has consented that the allegations in the Complaint "shall be accepted as and deemed true by the Court[.]" Dkt. No. [98-1] at 2–3.

Meyer. Id. Presently before the Court is the SEC's Motion for Remedies against Defendant Meyer. Dkt. No. [242]. The SEC seeks disgorgement and the imposition of third-tier civil penalties. Id. The Court addresses each requested remedy in turn, along with Defendant Meyer's objections.

### A. Disgorgement

The first remedy the SEC seeks is disgorgement. "Disgorgement is an equitable remedy intended to prevent unjust enrichment." SEC v. Levin, 849 F.3d 995, 1006 (11th Cir. 2017) (quoting SEC v. Monterosso, 756 F.3d 1326, 1336 (11th Cir. 2014)). "The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004). Once the SEC produces this figure, the "burden then shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation." Id. The approximation need not be exact, and "any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." Id.

The SEC seeks disgorgement in the amount of $1,140,000 and prejudgment interest of $307,409.91.[2] Dkt. No. [242-1] at 20–23. The SEC argues that, from January 2014 through March 2018, Defendant Meyer, through Statim, withdrew $1,140,000 from the Fund under the guise of performance fees.

---

[2] At the hearing on July 14, 2022, the SEC consented to calculate prejudgment interest as of entry of the bifurcated judgment against Defendant Meyer in January 2020. As a result, the SEC consented to lowering its prejudgment interest request from $384,829 to $307,409.91.

Id. at 21 (citing Dkt. No. [13-3] ¶ 14). In return for these fees, Statim was supposed to provide no-loss protection to investors in the Fund. Id. However, the SEC argues that these funds were not actually used to provide no-loss protection because Meyer prevented Statim from using the funds in such a way. Id. The SEC therefore seeks disgorgement of $1,140,000 to prevent Meyer from benefitting from this fraudulent conduct, and the SEC maintains that Statim and Meyer should be held jointly and severally liable. Id. at 21–23. However, because the Receiver has been largely successful in returning assets to the Fund's investors, the SEC asks that this disgorgement amount be rendered satisfied except for $37,801.89, which represents the deficit between the amount the Receiver was able to return to investors and the value of their accounts as of the date the Receiver was appointed. Id. at 22. Thus, the SEC ultimately asks that Meyer be ordered to pay $37,801.89. Id.

Defendant argues that the amount sought by the SEC is not a reasonable approximation and therefore constitutes an improper penalty. Dkt. No. [249] at 2–4. Defendant argues that the SEC's disgorgement calculation—including the $37,801.89—is wrong, unreasonable, and unreliable because it fails to account for the Fund's history and the potential growth and profits the investors received over time. Dkt. No. [249] at 4 (arguing that the SEC "has not approximated disgorgement based on Meyer's withdrawal of funds or how much was taken" because it did not consider "other relevant factors, such as[] growth and profits").

3

To this end, Defendant argues that "no real deficiency exists" in terms of purported investor loss. Id.

Defendant's objections to the SEC's request are unavailing because Defendant attempts to shift the focus to an argument about the performance of the Fund and the fact that its investors allegedly did not suffer losses. In this way, Defendant's arguments are not well-founded—and are indeed irrelevant—because the focus of disgorgement analysis is a defendant's ill-gotten gains and the prevention of unjust enrichment. See Levin, 849 F.3d at 1006. And so, though Defendant asserts that the SEC "has not approximated disgorgement based on Meyer's withdrawal of funds or how much was taken" because the SEC purportedly did not consider "other relevant factors, such as[] growth and profits[,]" Defendant does not actually challenge the fundamental premise that supports the SEC's disgorgement approximation and request, which is that Defendant Meyer, through Statim, withdrew $1,140,000 from the Fund to provide investors with no-loss protection but, in fact, prevented those funds from being used for that purpose. Dkt. No. [242-1] at 21. Nor does Defendant challenge that $1,140,000 was the actual amount withdrawn from the Fund to purportedly provide no-loss protection to the investors. Because Defendant's arguments are limited to issues that are not relevant to the calculation of disgorgement and a defendant's ill-gotten gains, the Court finds them unpersuasive. Accordingly, and as shown below, Defendant Meyer will be held liable for disgorgement in the

4

amount of $1,140,000 plus prejudgment interest of $307,409.91. However, this amount will be deemed satisfied except for $37,801.89.

### B. Civil Penalties

The SEC also asks the Court to impose third-tier civil penalties against Defendant Meyer. Dkt. No. [242-1] at 23–25.

Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Investment Advisers Act—with nearly identical language—authorize courts to impose monetary penalties for statutory violations. See 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e). The statutes provide for three tiers of penalties. Under the first tier, courts are permitted to impose a penalty "[f]or each violation"; a second-tier penalty may be imposed under each statute if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; and a third-tier penalty may be imposed when the second-tier requirements are met—that is, the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"—and the violation also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." See 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e); see also Monterosso, 756 F.3d at 1338 (discussing tiered penalty structure under 15 U.S.C. §§ 77t(d), 78u(d)(3)).

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." Monterosso, 756 F.3d at 1338. "[W]ith respect to penalties, the Commission need only make 'a proper

5

showing' that a violation has occurred and a penalty is warranted." SEC v. Warren, 534 F.3d 1368, 1370 (11th Cir. 2008). "The statutes leave the amount to be imposed to the discretion of the district judge." Monterosso, 756 F.3d at 1338.

Here, the SEC asks the Court to impose a civil penalty of $585,141, representing a third-tier penalty of $195,047 for each of Defendant Meyer's three statutory violations. Dkt. No. [242-1] at 23–24 (citing 17 C.F.R. § 201.1001). The SEC argues that Defendant's conduct warrants a third-tier penalty because it involved fraud and deceit, and the SEC further argues that his depletion of the Fund's accumulated profits (to purportedly provide no-loss protection) created a significant risk of substantial loss to the investors because his actions threatened Statim's ability to actually provide the no-loss protection. Id. at 24. The SEC also argues that Defendant engaged in numerous deceptive acts during the course of this litigation, which included: liquidating his family's accounts without imposing the fees that would have been assessed against other investors; imposing a 1.5% management fee on the Fund's assets despite representing to many investors that he would never charge a management fee; and calling loans in an effort to force investor redemptions and the incurrence of substantial penalties. Id. at 24–25.

In response, Defendant argues that third-tier penalties are not warranted because there was no substantial loss to investors, nor was there a significant risk of substantial loss.³ Dkt. No. [249] at 6–7. Defendant's central argument is that

---

³ In this way, Defendant does not appear to challenge that the second-tier penalty requirement is met in this case (that is, that the violation "involved fraud, deceit,

there was no significant risk of substantial loss in this case because the Fund was "backstopped" by money from Dr. Majmudar, Defendant Meyer's father-in-law. Id. Defendant suggests that Dr. Majmudar's money (over five million dollars in the Fund) was at his (Meyer's) disposal and could have been used to "back" any losses, meaning that a risk of loss for investors never truly existed. Id.

The Court is unpersuaded by Defendant's argument on this issue. During this litigation, Dr. Majmudar objected to the Receiver's distribution plan and took the position that he should be treated the same as other investors in the Fund. See Dkt. No. [126] at 4–5, 15–16. Defendant Meyer maintained the same position. See Dkt. No. [120] at 2. In other words, the record belies Defendant Meyer's current suggestion that Dr. Majmudar was a willing backstop for the Fund's other investors. Given that this is Defendant's only argument, and given that it is contradicted by the record, the Court finds that third-tier penalties are warranted. As discussed above, Defendant Meyer repeatedly withdrew profits from the Fund under the guise of using that money to provide no-loss protection to investors, yet the money was never put to that purpose. This conduct was not only deceitful and fraudulent, but it created a significant risk of substantial loss to investors because the money they believed would be used to ensure their no-loss

---

manipulation, or deliberate or reckless disregard of a regulatory requirement"); instead, Defendant's only argument is that the additional third-tier requirement—that the violation also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons"—has not been met. See Dkt. No. [249] at 6–7.

protection guarantee was never put that use—a fact that would have been significant to any reasonable investor. See Monterosso, 756 F.3d at 1338 ("[T]he fraudulent scheme created a substantial risk of loss as the revenue overstatements would have been important to any reasonable shareholder.").

Finally, Defendant Meyer argues that the Court should refrain from imposing any civil penalty in this case due to his distressed financial status and his inability to pay a fine if one is imposed. Dkt. No. [249] at 7. The Court is also unpersuaded by this argument. In assessing whether to impose civil penalties for violations of the securities laws, courts consider a number of relevant factors:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

SEC v. Huff, 758 F. Supp. 2d 1288, 1364 (S.D. Fla. 2010), aff'd, 455 F. App'x 882 (11th Cir. 2012) (per curiam). As is clear from this list, and as the Eleventh Circuit has stated, "[a]t most, ability to pay is one factor to be considered in imposing a penalty." Monterosso, 756 F.3d at 1339 (rejecting argument that the civil penalty imposed by the district court had exceeded the defendants' ability to pay). Here, the Court does not find that Defendant Meyer's inability to pay outweighs the other facts that weigh in favor of imposing a civil penalty, including the egregiousness of his fraudulent conduct and the fact that such conduct created a

8

significant risk of substantial loss to the investors. Accordingly, the Court will impose a civil penalty of $585,141, which represents a third-tier penalty of $195,047 for each of Defendant Meyer's three statutory violations.[4]

## II.     Final Judgment

Having addressed Defendant Meyer's objections, the Court enters the following Final Judgment as to Defendant Meyer.

### FINAL JUDGMENT AS TO DEFENDANT JOSEPH A. MEYER

The Securities and Exchange Commission having filed a Complaint and Defendant Joseph A. Meyer having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action.

### I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or

---

[4] Defendant Meyer also argues that the Court should not impose penalties for each violation because while his conduct violated three statutes, it was just one course of conduct. Dkt. No. [249] at 5. The Court disagrees and finds that the imposition of a penalty for each violation is warranted in this case. See SEC v. Miller, 744 F. Supp. 2d 1325, 1345 (N.D. Ga. 2010) ("Because the relevant statutes authorize penalties for 'each violation,' courts are empowered to multiply the statutory penalty amount by the number of statutes the defendant violated, and many do.")

of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

    (A)    any investment strategy or investment in securities,

    (B)    the prospects for success of any product or company,

    (C)    the use of investor funds,

    (D)    compensation to any person,

    (E)    Defendant's qualifications to advise investors; or

    (F)    the misappropriation of investor funds or investment proceeds.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph

also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)  to employ any device, scheme, or artifice to defraud;

(b)  to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)  to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

  (A) any investment strategy or investment in securities,

  (B) the prospects for success of any product or company,

  (C) the use of investor funds,

  (D) compensation to any person,

  (E) Defendant's qualifications to advise investors; or

  (F) the misappropriation of investor funds or investment proceeds.

  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

III.

  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, while acting as an investment adviser, Sections 206(1) and (2) of the Investment Advisers Act of 1940 (the "Investment Advisers Act") [15 U.S.C. § 80b-6(1) and (2)] by using the mails or any means or instrumentality of interstate commerce, directly or indirectly:

  (a)  to employ any device, scheme, or artifice to defraud any client or prospective client; or

  (b)  to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any client or prospective client, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any client or prospective client, about:

  (A)  any investment strategy or investment in securities,

  (B)  the prospects for success of any product or company,

  (C)  the use of client funds,

  (D)  compensation to any person,

  (E)  Defendant's qualifications to advise clients; or

  (F)  the misappropriation of client funds or investment proceeds.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8], while acting as an investment adviser to a pooled investment vehicle, by use of the means and instrumentalities of interstate commerce and of the mails, from

a. making untrue statements of material fact and omitting to state material facts necessary to make statements made, in the light of circumstances under which they were made, not misleading, to investors and prospective investors in pooled investments vehicles; and

b. engaging in acts, practices, and course of business that were fraudulent, deceptive, and manipulative with respect to investors and prospective investors in pooled investment vehicles.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is jointly and severally liable with Defendant Statim Holdings, Inc. for disgorgement of $1,140,000, representing net profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $307,409.91 but the Court deems disgorgement and prejudgment interest satisfied by the amount collected by the receiver and distributed to investors except for $37,801.89, which represents the deficiency between the book value of investor accounts and the amount the receiver distributed to investors. Defendant shall satisfy this obligation by paying $37,801.89 to the Securities and Exchange Commission within 30 days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

>   Enterprise Services Center
>   Accounts Receivable Branch
>   6500 South MacArthur Boulevard
>   Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Joseph A. Meyer as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.

The Commission shall hold the funds (collectively, the "Fund") until further order of this Court. The SEC may propose a plan to distribute the Fund subject to the Court's approval, and the Court shall retain jurisdiction over the administration of any distribution of the Fund.

The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by using all collection procedures authorized by law, including, but not limited to, moving for civil contempt at any time after 30 days following entry of this Final Judgment. Defendant shall pay post judgment interest on any amounts due after 30 days of entry of this Final Judgment pursuant to 28 U.S.C. § 1961.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay a civil penalty in the amount of $585,141 to the Securities and Exchange Commission pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)],

Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]. Defendant shall make this payment within 30 days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Joseph A. Meyer as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 et seq., and moving for civil contempt for the violation of any Court orders issued in this action. Defendant shall pay post-judgment interest on any amounts due after 30 days of the entry of this Final Judgment pursuant to 28 U.S.C. § 1961.

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the allegations in the complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

**IT IS SO ORDERED** this 9th day of August, 2022.

                                           Leigh Martin May
                                           United States District Court