## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action File No. 1:18-cv-05868-LMM |
| JOSEPH A. MEYER, JR. and STATIM HOLDINGS, INC., | |
| Defendants. | |

### RECEIVER'S FINAL REPORT AND MOTION TO CLOSE RECEIVERSHIP WITH BRIEF IN SUPPORT

Al Hill, the Receiver appointed in these proceedings ("Receiver"), files this final report and moves the Court to (a) accept this final report by the Receiver, (b) direct the Receiver to dissolve Arjun, L.P., (c) approve the fees and expenses of the Receiver, his counsel, and Lightfoot Group in the third quarter of 2022, (d) authorize the Receiver to pay other final expenses when due, (e) discharge the Receiver from further responsibilities after dissolving Arjun, and (f) terminate the receivership, effective upon the dissolution.

### A.    Background

On July 9, 2019, this Court appointed the Receiver "for the purposes of marshaling and preserving assets of Statim and the hedge fund that it controls, Arjun, L.P. ('Arjun' or the 'Fund') and for obtaining independent representation for Statim and the Fund."  [Doc. 71 at 1-2.]

On February 27, 2020, the Court approved the claims process proposed by the Receiver.  [Doc. 106.]    Thereafter, the Court considered and ruled on several objections filed by claimants, primarily objections by Mr. Meyer's father-in-law, Dr. Majmudar, and the Court approved the Receiver's plan of distribution.  [Doc. 149.] The Receiver and claimants reached agreement on a first distribution to Arjun investors, and the Court approved that distribution on September 2, 2020, while discovery was proceeding on some of the objections. [Doc. 157.]  The Receiver distributed $10,478,010.51 to Arjun investors in that first round, which was 75 percent of each investor's capital account.

On February 5, 2021, the Court ruled on objections by Dr. Majmudar, Mrs. Meyer, and other claimants and approved the Receiver's proposed plan for additional distributions, except that the Court determined that all investors who benefit from the distributions should share pro rata in the expenses associated with the receivership rather than allocating those expenses entirely to Statim.  [Doc. 187.]

Dr. Majmudar filed an appeal to the U.S. Court of Appeals for the Eleventh Circuit, and while that appeal was pending the parties negotiated a settlement, under which Dr. Majmudar would receive $1,820,000, which represented approximately 68 percent of the amount that he originally sought.  On June 1, 2021, the Court approved the settlement, approved a second distribution to current and certain former Arjun investors, directed the Receiver to maintain a reserve of $250,000 to cover anticipated costs, and directed the Receiver take steps necessary to close out the receivership.  [Doc. 211.]  The Receiver distributed the settlement amount to Dr. Majmudar and $3,656,356.68 to other Arjun investors in the second round of distributions.  By the end of July, 2021, all second round distributions had been completed, with the exception of those due two investors who had not supplied account information.  [Doc. 224.]

In the first quarter of 2022, the Receiver completed the third and final distribution to Arjun investors, in the amount of $116,708.41 [Doc. 248.]  In total, Arjun investors received $14,252,075.60 from the receivership, which represented all but $37,801.89 of their capital accounts, a recovery of 99.7% of their previously unrecovered initial investment.

The final audit of Arjun is complete, and the audit report and financial statements are attached as Exhibit A to this report.  The tax returns for 2021 have

been prepared and filed, and the final tax return for 2022 will be completed shortly. Services of the third-party administrator, Panoptic, were terminated as of June 30, 2022.   IRS K-1 forms have been distributed to investors for 2021 and will be distributed for 2022 after the end of the 2022 tax year.

**B.    Current Financial Condition of Receivership**

The sole remaining asset of the receivership is $41,119.21 in cash.   The following expenses have been incurred but not yet paid or are expected to be incurred before completion of the Receiver's activities:

$27,700.00 (estimated) to Rubio CPA for the audit (completed, but not yet paid) and for final tax returns for Arjun and Statim through 2022;

$7,000 due to Panoptic, Arjun's third-party administrator;

$2,762.50 due to Taylor English Duma LLP for work done July 1 through August 19, 2022;

$3,675 due to Continuum Legal Group LLP for work done July 1 through August 19;

$475 due to Lightfoot Group for work done July 1 through August 17; and

$2,000 (estimated) remaining fees of Taylor English Duma LLP to complete tax returns, investor communications, closure of all fund activities, and dissolution of Arjun.

The Receiver does not expect to have any excess funds after expenses are paid.

## C.   Relief Requested

On June 1, 2021, The Court directed:

> Thereafter, [after making distributions to investors,] the Receiver shall work toward a conclusion of the receivership, including closing out the work of the third-party administrator, having final financial statements prepared, and obtaining a final audit of the Fund and final tax returns, so that Arjun can be dissolved. When that work is done, the Receiver shall report back to the Court and advise whether any of the reserve is unspent and, if so, whether in the Receiver's judgment a supplemental distribution is cost effective.

[Doc. 211 at 2.]

As noted above, the work necessary to close out the receivership has been done.  All the reserve has been spent (except for amounts to cover final fees of the Receiver, counsel, and the accountant, which will be paid when the Court approves those expenditures, and the filing fees due the Georgia Secretary of State for the dissolution of Arjun).

The Receiver requests that the Court (a) accept this final report by the Receiver, (b) direct the Receiver to dissolve Arjun, (c) approve the fees and expenses of the Receiver, his counsel, and Lightfoot Group in the third quarter of 2022 (attached as Exhibit B), (d) authorize the Receiver to pay other final expenses when due, (e) discharge the Receiver from further responsibilities after dissolving Arjun,

and (f)  terminate the receivership, effective upon the dissolution.  A proposed order is attached.

The Receiver will post this final report on the receivership website to make it available to investors.

Respectfully submitted, this 19th day of August, 2022.  This document was prepared with Times New Roman 14-point font.

/s/ William G. Leonard
WILLIAM G. LEONARD
Georgia Bar No. 446912
bleonard@ContinuumLG.com

Continuum Legal Group LLP
5605 Glenridge Drive, Suite 600
Atlanta, Georgia 30342
Telephone: (770) 800-1538

Attorney for Receiver Al B. Hill

# Exhibit A

# RUBIO CPA, PC

CERTIFIED PUBLIC ACCOUNTANTS

2727 Paces Ferry Road SE
Building 2, Suite 1680
Atlanta, GA 30339
Office: 770 690-8995
Fax: 770 838-7123

July 5, 2022

Statim Holdings, LLC
Attn: Al Hill, Receiver
Al Hill
Taylor English Duma, LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339

Dear Al:

We have audited the financial statements of Arjun, LP for the period ended April 30, 2022, and have issued our report thereon dated July 5, 2022. Professional standards require that we provide you with information about our responsibilities under generally accepted auditing standards, as well as certain information related to the planned scope and timing of our audit. We have communicated such information in our engagement letter to you dated June 8, 2022. Professional standards also require that we communicate to you the following information related to our audit.

Significant Audit Findings

*Qualitative Aspects of Accounting Practices*

You are responsible for the selection and use of appropriate accounting policies. The significant accounting policies used by the Company are described in Note 2 to the financial statements. No new accounting policies were adopted and the application of existing policies was not changed during the period ended April 30, 2022. We noted no transactions entered into by the Company during the year for which there is a lack of authoritative guidance or consensus. All significant transactions have been recognized in the financial statements in the proper period.

Accounting estimates are an integral part of the financial statements and are based on your knowledge and experience about past and current events and assumptions about future events. Certain accounting estimates are particularly sensitive because of their significance to the financial statements and because of the possibility that future events affecting them may differ significantly from those expected. There were no sensitive estimates affecting the financial statements.

Certain financial statement disclosures are particularly sensitive because of their significance to financial statement users. There were no sensitive disclosure(s) affecting the financial statements.

The financial statement disclosures are neutral, consistent, and clear.

*Difficulties Encountered in Performing the Audit*

We encountered no significant difficulties in dealing with management in performing and completing our audit.

*Corrected and Uncorrected Misstatements*

Professional standards require us to accumulate all misstatements identified during the audit, other than those that are clearly trivial, and communicate them to the appropriate level of management. There were no significant misstatements detected as a result of audit procedures, either individually or in the aggregate, to the financial statements taken as a whole.

*Disagreements with Management*

For purposes of this letter, a disagreement with management is a financial accounting, reporting, or auditing matter, whether or not resolved to our satisfaction, that could be significant to the financial statements or the auditor's report. We are pleased to report that no such disagreements arose during the course of our audit.

*Other Audit Findings or Issues*

There were no other significant audit findings or issues.

This information is intended solely for the use of those charged with governance and if appropriate, management of the Company and is not intended to be, and should not be, used by anyone other than these specified parties.

Very truly yours,

Rubio CPA, PC

ARJUN, L.P.

FINANCIAL STATEMENTS
and
INDEPENDENT AUDITOR'S REPORT

FOR THE PERIOD FROM JANUARY 1, 2020, THROUGH APRIL 30, 2022

TABLE OF CONTENTS

INDEPENDENT AUDITOR'S REPORT

FINANCIAL STATEMENTS
   Statement of Financial Condition
   Statement of Operations
   Schedule of Changes in Partners' Capital
   Statement of Cash Flows
   Notes to Financial Statements

# RUBIO CPA, PC
CERTIFIED PUBLIC ACCOUNTANTS

2727 Paces Ferry Road SE
Building 2, Suite 1680
Atlanta, GA 30339
Office: 770 690-8995
Fax: 770 838-7123

## INDEPENDENT AUDITOR'S REPORT

To the Partners of Arjun, L.P.

**Opinion**

We have audited the accompanying financial statements of Arjun, L.P. ("the Partnership"), which comprise the statement of financial condition as of April 30, 2022, and the related statements of operations, changes in partners' capital, and cash flows for the period then ended, and the related notes to the financial statements.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Arjun, L.P. as of April 30, 2022, and the results of its operations and its cash flows for the period then ended in accordance with accounting principles generally accepted in the United States of America.

**Basis for Opinion**

We conducted our audit in accordance with the auditing standards generally accepted in the United States of America. Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are required to be independent of the Partnership and to meet our other ethical responsibilities in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

**Responsibilities of Management for the Financial Statements**

Management is responsible for the preparation and fair presentation of the financial statements in accordance with accounting principles generally accepted in the United States of America, and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the Partnership's ability to continue as a going concern within one year after the date that the financial statements are issued.

- 1 -

**Auditor's Responsibility for the Audit of the Financial Statements**

Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with generally accepted auditing standards will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements, including omissions, are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the financial statements.

In performing an audit in accordance with generally accepted auditing standards, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.

- Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements.

- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control. Accordingly, no such opinion is expressed.

- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the financial statements.

- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Partnership's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control related matters that we identified during the audit.

Atlanta, Georgia
July 5, 2022

Rubio CPA, PC
Rubio CPA, PC

- 2 -

ARJUN, L.P.
Statement of Financial Condition
April 30, 2022

| | | |
|---|---|---|
| **Assets** | | |
| Cash | $ | 76,172 |
| **Total Assets** | | 76,172 |
| **Liabilities and Partners' Capital** | | |
| Accounts payable and accrued expenses | | 67,785 |
| **Total Liabilities** | | 67,785 |
| **Partners' Capital** | | 8,387 |
| **Total Liabilities and Partners' Capital** | | $ 76,172 |

This financial statement should be read only in connection with the
accompanying independent auditor's report and notes to financial statements.

- 3 -

ARJUN, L.P.
Statement of Operations
For the Period Ended April 30, 2022

| | | |
|---|---|---:|
| **Investment Income** | | |
| Interest | $ | 136,608 |
| Interest from partner loans | | 85,519 |
| Dividends | | 3,443 |
| **Total Investment Income** | | 225,570 |
| | | |
| **Expenses** | | |
| Professional fees | | 522,308 |
| Fund administration | | 74,355 |
| Other expenses | | 63,125 |
| **Total Expenses** | | 659,788 |
| | | |
| **Net Investment Loss** | | (434,218) |
| | | |
| **Realized and Unrealized Gain (Loss) on Investments** | | |
| Net realized gain on investments | | 11,405 |
| Net change in unrealized depreciation of investments | | (13,765) |
| **Total Net Realized and Unrealized Loss on Investments** | | (2,360) |
| | | |
| **Net Decrease in Net Assets Arising from Operations** | $ | (436,578) |

This financial statement should be read only in connection with the
accompanying independent auditor's report and notes to financial statements.

- 4 -

ARJUN, L.P.
Statement of Changes in Partners' Capital
For the Period Ended April 30, 2022

| | Limited Partners | Class A | Class B | Class C | General Partner | Total |
|---|---|---|---|---|---|---|
| **Balance, December 31, 2019** | $ 14,698 | $ 23,064,931 | $    - | $ 282,586 | $ 1,585,521 | $   24,947,736 |
| Capital contributions | - | - | - | - | 1,029,499 | 1,029,499 |
| Capital withdrawals | (193,992) | (23,113,600) | (3,695) | (281,956) | (1,939,027) | (25,532,270) |
| Capital transfers | 192,767 | 436,633 | 3,753 | 4,792 | (637,945) | - |
| Allocation of net loss | (13,058) | (380,147) | (58) | (5,267) | (38,048) | (436,578) |
| **Balance, April 30, 2022** | $     415 | $   7,817 | $    - | $   155 | $       - | $     8,387 |

This financial statement should be read only in connection with the
accompanying independent auditor's report and notes to financial statements.

- 5 -

ARJUN, L.P.
Statement of Cash Flows
For the Period Ended April 30, 2022

| | | |
|---|---|---:|
| **Cash Flows From Operating Activities** | | |
| Net decrease in net assets arising from operations | $ | (436,578) |
| Adjustments to reconcile net decrease in net assets arising | | |
|   from operations to net cash provided by operating activities: | | |
|   Net realized gain on investments | | (11,405) |
|   Net change in unrealized depreciation of investments | | 13,765 |
|   Purchases of investments | | (4,347,441) |
|   Proceeds from sales of investments | | 13,448,119 |
|   Changes in assets and liabilities: | | |
|     Loans receivable from partners | | 9,333,581 |
|     Interest receivable | | 166 |
|     Prepaid expenses | | 37,153 |
|     Due from general partner | | 235,405 |
|     Other receivable | | 12,761 |
|     Accounts payable and accrued expenses | | (103,168) |
|     Distributions payable | | (198,901) |
|     Management fees payable to general partner | | (63,143) |
| **Net Cash Flows Provided By Operating Activities** | | 17,920,314 |
| **Cash Flows From Financing Activities** | | |
|   Proceeds from capital contributions | | 1,029,499 |
|   Payments for capital withdrawals | | (25,532,270) |
| **Net Cash Flows Used By Financing Activities** | | (24,502,771) |
| **Net Decrease in Cash** | | (6,582,457) |
| **Cash, Beginning of Period** | | 6,658,629 |
| **Cash, End of Period** | $ | 76,172 |

**Supplemental Information**
Non-cash financing activities:
  Capital withdrawals from removal of loans receivable balances    9,315,213

This financial statement should be read only in connection with the
accompanying independent auditor's report and notes to financial statements

- 6 -

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

## NOTE 1 - DESCRIPTION OF BUSINESS

Description of Business

Arjun, L.P. ("the Partnership") is a Delaware limited partnership formed on April 10, 2007, to operate as a private investment partnership. Statim Holdings, LLC ("the General Partner") is a Georgia limited liability company that serves as the General Partner of the Partnership. The General Partner has investment authority over the Partnership's assets and makes all investment decisions on behalf of the Partnership. The Partnership is being operated by a court appointed receiver effective July 2019 and is expected to be liquidated during 2022. The Partnership is no longer offering partnership interests to investors and has not done so since the inception of the receivership.

The Partnership's investment objective is to preserve capital through investment in less volatile securities such as treasury bonds and certificates of deposit until liquidation.

Interests offered to investors are without registration under the Securities Act of 1933, as amended, or the securities laws of any state, in reliance on the private offering exemption contained in Rule 506 of Regulation D issued under the Securities Act of 1933 and in reliance on similar exemptions under applicable state laws. Under Rule 506 and certain state laws, the Partnership must determine that a person, or a person together with a purchaser representative, meets certain suitability requirements before offering to sell interests to such an individual.

## NOTE 2 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

Basis of Accounting, Trading and Valuation of Securities

In accordance with the Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") 946, Financial Services – Investment Companies ("ASC 946"), the Partnership has determined that it is an investment company and has applied the guidance in accordance with ASC 946.

The Partnership recognizes revenue in accordance with Revenue from Contracts with Customers (FASB ASC 606). The core principal of this standard is that an entity should recognize revenue when it transfers promised goods or services in an amount that reflects the consideration to which the entity expects to be entitled in exchange for those goods or services. FASB ASC 606 prescribes a five-step process to accomplish this core principle, including:

- Identification of the contract with the customer;

- 7 -

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

## NOTE 2 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (Continued)

Basis of Accounting, Trading and Valuation of Securities (Continued)

- Identification of the performance obligation(s) under the contract;
- Determination of the transaction price;
- Allocation of the transaction price to the identified performance obligation(s); and
- Recognition of revenue as (or when) an entity satisfies the identified performance obligation(s).

The Partnership records its securities transactions on a trade-date basis.  Realized gains or losses are recorded upon disposition of investments calculated based upon the difference between the proceeds and the cost basis determined using the specific identification method.  All other changes in the valuation of portfolio investments are included as changes in the unrealized appreciation or depreciation of investments in the accompanying statement of operations.  Dividend income is recorded on the ex-dividend date and interest income and expense are recorded on an accrual basis.

The Partnership values its investments in accordance with Accounting Standards Codification 820- Fair Value Measurements ("ASC 820").  Under ASC 820, fair value is defined as the price that would be received to sell an asset or paid to transfer a liability (the, "exit price") in an orderly transaction between market participants at the measurement date.

In determining fair value, the Partnership uses various valuation approaches. ASC 820 establishes a fair value hierarchy for inputs used in measuring fair value that maximizes the use of observable inputs and minimizes the use of unobservable inputs by requiring that the most observable inputs be used when available.  Observable inputs are those that market participants would use in pricing the asset or liability based on market data obtained from sources independent of the Partnership. Unobservable inputs reflect the Partnership's assumption about the inputs market participants would use in pricing the asset or liability developed based on the best information available in the circumstances.  The fair value hierarchy is categorized into three levels based on the inputs as follows:

Level 1 – Valuations based on unadjusted quoted prices in active markets for identical assets or liabilities that the Partnership has the ability to access.  Valuation adjustments and blockage discounts are not applied to Level 1 securities.  Since valuations are based on quoted prices that are readily and regularly available in an active market, valuation of these securities does not entail a significant degree of judgment.

Level 2 – Valuations based on quoted prices in markets that are not active or for which all significant inputs are observable, either directly or indirectly. These inputs may include quoted prices for an identical instrument in an inactive market, prices for similar

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

**NOTE 2 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES** (Continued)

<u>Basis of Accounting, Trading and Valuation of Securities</u> (Continued)

>   instruments in active markets, interest rates, yield curves, implied volatilities, credit spreads, and market-collaborated inputs.

>   Level 3 – Valuations based on inputs that are unobservable and significant to the overall fair value measurement.

The availability of observable inputs can vary from security to security and is affected by a wide variety of factors, including, for example, the type of security, whether the security is new and not yet established in the marketplace, the liquidity of markets, and other characteristics particular to the transaction.  To the extent that valuation is based on models or inputs that are less observable or unobservable in the market, the determination of fair value requires more judgment.  Those estimated values do not necessarily represent the amounts that may be ultimately realized due to the occurrence of future circumstances that cannot be reasonably determined.

Because of the inherent uncertainty of valuation, those estimated values may be materially higher or lower than the values that would have been used had a ready market for the securities existed. Accordingly, the degree of judgment exercised by the Partnership in determining fair value is greatest for securities categorized in level 3.  In certain cases, the inputs used to measure fair value may fall into different levels of the fair value hierarchy. In such cases, for disclosure purposes, the level in the fair value hierarchy within which the fair value measurement falls in its entirety is determined by the lowest level input that is significant to the fair value measurement.

Fair value is a market-based measure considered from the perspective of a market participant rather than an entity-specific measure. Therefore, even when market assumptions are not readily available, the Partnership's own assumptions are set to reflect those that market participants would use in pricing the asset or liability at the measurement date.  The Partnership uses prices and inputs that are current as of the measurement date, including during periods of market dislocation.  In periods of market dislocation, the observability of prices and inputs may be reduced for many securities.  This condition could cause a security to be reclassified to a lower level within the fair value hierarchy

The Partnership values investments in securities that are freely tradable and are listed on a national securities exchange or reported on the NASDAQ national market at the last reported sales price as of the day of valuation. To the extent these securities are actively traded, and valuation adjustments are not applied, they are categorized in level 1 of the fair value hierarchy.

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

**NOTE 2 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES** (Continued)

Basis of Accounting, Trading and Valuation of Securities (Continued)

Many cash and over-the-counter ("OTC") contracts have bid-and-ask prices that can be observed in the marketplace. Bid prices reflect the highest price that the marketplace participants are willing to pay for an asset. Ask prices represent the lowest price that the marketplace participants are willing to accept for an asset. For securities whose inputs are based on bid-ask prices, the Partnership's valuation policies require that fair value be within the bid-ask range. The Partnership's policy for securities traded in the OTC markets and listed securities for which no sale was reported on the date are valued at their last reported "bid" price if held long, and last reported "ask" price if sold short. The Partnership considers these investments as Level 1 securities for active markets and Level 2 securities for thinly traded markets.

Short term notes such as certificates of deposit are valued using amortized cost, which approximates fair value. To the extent that the inputs are observable and timely, the values would be categorized in level 2 of the fair value hierarchy.

The fair value of U.S. government securities is normally determined using a model that incorporates market observable data, such as reported sales of similar securities, broker quotes, yields, bids, offers, and reference data. Certain securities are valued principally using dealer quotations. U.S. government securities are categorized in level 1 or level 2 of the fair value hierarchy, depending on the inputs used and market activity levels for specific securities.

When observable price quotations are not available, fair value is determined based on cash flow models with yield curves, bond spreads, and recovery rates based on collateral values as key inputs.

Income Taxes

The financial statements do not include a provision for income taxes because the Partnership is not a taxable entity and as such partners are taxed on their respective shares of the Partnership's earnings.

The Partnership is required to determine whether a tax position is more likely than not to be sustained upon examination by the applicable taxing authority, including resolution of any tax related appeals or litigation processes, based on the technical merits of the position. The Partnership files an income tax return in the U.S. federal jurisdiction, and may file income tax returns in various U.S. states. The Partnership has adopted the provisions of FASB ASC 740-10, Accounting for Uncertainty in Income Taxes. Under this provision, the Partnership is required to evaluate each of its tax positions to determine if they are more likely than not to be sustained if the

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

**NOTE 2 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES** (Continued)

Income Taxes (Continued)

taxing authority examines the respective position. A tax position includes an entity's status, including its status as a pass-through entity, and the decision not to file a return.

The Partnership has evaluated each of its tax positions and has determined that no provision or liability for income taxes is necessary.

Cash

Cash consists of demand deposits in high credit quality banks. Balances at times may exceed federally insured limits.

Short Sales

The Partnership may sell a security it does not own in anticipation of a decline in the fair value of that security. When the Partnership sells a security short, it must borrow the security sold short and subsequently deliver it to the broker-dealer through which it made the short sale. A gain, limited to the price at which the Partnership sold the security short, or a loss, unlimited in amount, will be recognized upon the termination of the short sale.

Use of Estimates

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

**NOTE 3 - LIMITED PARTNERSHIP AGREEMENT**

Interests

The Partnership has four Classes of limited partnership interests: limited partnership interests, Class A interests, Class B interests, and Class C interests. Limited partnership interests have been offered since inception. Class A, B and C interests were established on August 15, 2009.

- 11 -

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

**NOTE 3 - LIMITED PARTNERSHIP AGREEMENT** (Continued)

Allocation of Partnership Income

Net profits and losses are allocated to the capital account holders of limited partnership interests in proportion to their respective ownership percentages of the Partnership.

Prior to January 1, 2020, Class A limited partnership interests were protected against the loss of their capital contributions to the Partnership.  No net losses were to be allocated to the capital account holders of Class A limited partnership interests if the effect of such allocation would be to reduce the value of such capital account below the value of the Class A partner's capital account balance at the end of the prior month.  This downside protection was collateralized solely by the capital accounts of the General Partner and the capital accounts of the holders of limited partnership interests.  In exchange for this downside protection, 50% of the incremental net profits of the Partnership that would have been allocated to the capital account of the holder of the Class A limited partnership interest was instead allocated to the General Partner and to the holders of the limited partnership interests in proportion to downside protection assumed by each.

Commencing on January 1, 2020, net profits and losses are allocated to the capital account holders of Class A limited partnership interests in proportion to their respective ownership percentages of the Partnership.

Prior to January 1, 2020, Class B limited partnership interests provided for a fixed rate of return as determined by the General Partner ("the Guaranteed Profit Allocation"). The obligation to provide the fixed rate of return was collateralized solely by the capital accounts of the holders of the limited partnership interests and the General Partner.  Any net profits of the Partnership that would have been allocated to the capital accounts of the holders of the Class B interests would instead be allocated to the General Partner and the holders of limited partnership interests as a class. The allocation between the General Partner and the holders of the limited partnership interests was in proportion to the downside protection risk assumed by each.

Commencing on January 1, 2020, net profits and losses are allocated to the capital account holders of Class B limited partnership interests in proportion to their respective ownership percentages of the Partnership.

Prior to January 1, 2020, Class C limited partnership interests provided for a specific rate of return as determined by the General Partner from time to time ("the Guaranteed Profit Allocation").  Net profits and losses of the Partnership were not to be allocated to the holders of Class C limited partnership interests.  The obligation to provide the specific rate of return was collateralized solely by the capital accounts of the General Partner and the capital account holders of the limited

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

**NOTE 3 - LIMITED PARTNERSHIP AGREEMENT** (Continued)

Allocation of Partnership Income (Continued)

partnership interests.  Any net profits of the Partnership that would have been allocated to the capital accounts of the holders of the Class C limited partnership interests would instead be allocated to the General Partner and to the holders of the limited partnership interests in proportion to their ownership of the limited partnership interest as a class. The allocation between the General Partner and the holders of the limited partnership interests was in proportion to the downside protection risk assumed by each.

Commencing on January 1, 2020, net profits and losses are allocated to the capital account holders of Class C limited partnership interests in proportion to their respective ownership percentages of the Partnership.

Capital Contributions and Withdrawals

The minimum initial investment is $225,000 and the minimum amount for additional contributions is $10,000. The General Partner may waive or reduce these requirements.  The offering is continuous until suspended or terminated by the General Partner.  With approval of the General Partner, interests may be purchased at any time.

A limited partner may make a withdrawal from its capital account with respect to its limited partnership interests, but may be subject to a redemption fee of 15% if such withdrawal occurs within 36 months of such limited partner's contribution.  The fee will be evenly split between the holders of the limited partnership interests, other than the limited partner making the withdrawal, and the General Partner. There were no withdrawals by limited partners subject to the redemption fee during the period from January 1, 2020, through April 30, 2022.

Holders of Class A limited partnership interests may make withdrawals of their capital following the tenth anniversary of the date of the contribution. Any withdrawals prior to the tenth anniversary may be subject to a 50% redemption fee.  The redemption fee will be split between the holders of the limited partnership interests and the General Partner in proportion to the risk assumed with respect to the downside protection provided to the Class A limited partnership interests.  The limited partners' share of the fee will be allocated on a pro rata basis and credited to each limited partner's capital account.  There were no withdrawals from Class A limited partnership interests subject to the redemption fee during the period from January 1, 2020, through April 30, 2022.

Net profits, if any, credited to the capital account of a holder of Class A limited partnership interests for any year may be withdrawn for a period of 30 days following the receipt of the annual

- 13 -

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

**NOTE 3 - LIMITED PARTNERSHIP AGREEMENT** (Continued)

<u>Capital Contributions and Withdrawals</u> (Continued)

audited financial information required by the Partnership Agreement. Any net profit not withdrawn shall be deemed a new contribution and will be subject to the initial ten-year holding period.

Class B limited partnership interests may make withdrawals of capital following the tenth anniversary of the date of the contribution.  Any withdrawals prior to the tenth anniversary may be subject to a 50% redemption fee.  The redemption fee will be split between the holders of the limited partnership interests and the General Partner in proportion to the risk assumed with respect to the downside protection provided to the Class B limited partnership interests.  The limited partner's share of the fee will be allocated on a pro rata basis and credited to each limited partner's capital account.  There were no withdrawals from Class B limited partnership interests subject to the redemption fee during the period from January 1, 2020, through April 30, 2022.

Holders of Class B limited partnership interests are entitled to withdraw interest credited to their capital accounts at any time in full or part with 15 day notice; provided, however, any interest not withdrawn within a thirty day period following receipt of the annual audited financial information required by the Partnership Agreement shall be deemed reinvested at the prevailing interest rate and subject to the initial ten-year holding period.

Holders of Class C limited partnership interests may make withdrawals from their capital accounts at any time on fifteen days prior notice to the General Partner.

The General Partner, in its sole discretion, may modify or waive any of the contribution or withdrawal requirements as to a particular limited partner.

**NOTE 4 – MANAGEMENT AND ADMINSITRATIVE FEES**

Limited partners of the Partnership may pay a management fee to the General Partner for managing their interests in the Partnership and for overseeing the activities of all third parties who serve and administer the affairs of the Partnership.  The management fee is calculated at a rate of 0.125% (1.5% per annum) of the month-end capital account value prior to any capital withdrawals and contributions which occur during a month.  The General Partner, in its sole discretion, may choose to waive or reduce the management fee rate for certain limited partners.

In addition, capital accounts established after August 15, 2009, may be subject to monthly administrative fees of 5% per annum on accounts with a value of less than $100,000 and 3% per

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

## NOTE 4 - MANAGEMENT AND ADMINSITRATIVE FEES (Continued)

annum on accounts with a value between $100,000 and $225,000.

The receiver appointed over Statim Holdings, LLC, has waived all management and administrative fees since the inception of the receivership on July 9, 2019.

## NOTE 5 - LOANS RECEIVABLE FROM PARTNERS

Loans receivable from partners represented loans at variable interest rates that were callable on demand. The interest rate charged on loans was able to change at any time at the discretion of the General Partner. The loans were collateralized by the limited partners' respective capital accounts. The receiver appointed over Statim Holdings, LLC, continued to accrue interest for each loan at the applicable rate for such loan, but ceased collecting payments on loan accounts during the receivership.

## NOTE 6 - FINANCIAL INSTRUMENTS WITH OFF-BALANCE SHEET RISKS

In the normal course of its business, the Partnership enters into various financial transactions. The execution of these transactions may result in off-balance sheet risk or concentration of credit and price risk. The Partnership records investment transactions on a trade-date basis and, therefore, is exposed to credit risk in the event that the Partnership's counterparties are unable to fulfill contractual agreements on the date of settlement.

Price risk is comprised of interest rate, market risk and currency risk. Interest rate risk is the risk that the value of financial instruments (mainly investments) may fluctuate as a result of changes in market interest rates. Market risk is the risk that the market values of investments change due to changes in market conditions. Investments in exchange traded funds, common stocks and bonds are subject to market and interest rate risk. Currency risk is the risk that the value of financial instruments may fluctuate as a result of changes in foreign exchange rates. Investments in foreign bonds are subject to currency risk, in addition to market and interest rate risk.

The Partnership may engage in short selling activities, wherein it borrows securities and sells them to third parties. Until the Partnership covers its short sales, it is exposed to market risk to the extent that subsequent market fluctuations may require securities sold, not yet purchased, to be acquired at prices which may be significantly higher than the market value reflected in the statement of assets and liabilities.

- 15 -

ARJUN, L.P.
Notes to Financial Statements
April 30, 2022

**NOTE 7 - SUBSEQUENT EVENTS**

The Partnership has performed an evaluation of subsequent events through July 5, 2022, which is the date the financial statements were issued.  The evaluation did not result in any subsequent events that required disclosures and/or adjustments.

**NOTE 8 - CONTINGENCIES**

The Partnership is subject to litigation in the normal course of business. The Partnership has no litigation in progress at April 30, 2022, as defendant.

**NOTE 9 – TERMINATION**

The Partnership intends to distribute all remaining monies to its partners during 2022.

# Exhibit B

# taylor | english

**Taylor English Duma LLP** 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 **taylorenglish.com**

US District Court - Northern District of Georgia
c/o Al B. Hill
1600 Parkwood Circle
Suite 200
Atlanta, GA  30339

| | |
|---|---|
| Statement Date: | August 19, 2022 |
| Statement No. | 739634 |
| Account No. | 76031.0000 |
| Federal ID No. | 201310229 |

Re:   Statim Holdings - Activities of Receiver

**PREVIOUS BALANCE BROUGHT FORWARD**                                        $5,408.02

|  | | | Hours | |
|---|---|---|---|---|
| 07/01/2022 | ABH | Review and approve audit letter; review April 30, 2022 financial reports. | 1.30 | 552.50 |
| 07/05/2022 | ABH | Review and approve final audit report and letter. | 0.20 | 85.00 |
| 07/11/2022 | ABH | Review accountant's records to reconcile fee payments. | 0.60 | 255.00 |
| 07/13/2022 | ABH | Go over account reconciliation to determine outstanding liabilities; telephone conference with J. Hart. | 0.70 | 297.50 |
| 07/28/2022 | ABH | Review proposed changes and finalize quarterly report. | 0.20 | 85.00 |
| 08/02/2022 | ABH | Review and sign 2021 tax returns. | 0.50 | 212.50 |
| 08/12/2022 | ABH | Email exchange with J. Meyer's accountants regarding 2020 K-1s. | 0.30 | 127.50 |
| 08/15/2022 | ABH | Draft final cash analysis spreadsheet; telephone conference with R. Rubio; telephone conference with B. Leonard; telephone conference with J. Hart; review plans for final tax filings; review final motion drafts from B. Leonard. | 1.60 | 680.00 |
| 08/16/2022 | ABH | Review proposed final Motion and Order; emails with B. Leonard regarding attachments; update final cash estimate; update final motion to correct dollar amounts. | 0.90 | 382.50 |
| 08/17/2022 | ABH | Correspondence with D. Recknagel regarding Forge Trust distributions. | 0.20 | 85.00 |
| | | FOR PROFESSIONAL SERVICES RENDERED | 6.50 | 2,762.50 |

FEE SUMMARY

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Al Hill | 6.50 | $425.00 | $2,762.50 |

Statement Date: 08/19/2022
Statement No. 739634
Account No. 76031.0000

US District Court - Northern District of Georgi

|  | TOTAL CURRENT FEES AND COSTS | 2,762.50 |
|---|---|---|
| 08/16/2022 | Wire Payment.  Thank you. Arjun GA | -5,408.02 |
|  | **Balance Due.................................** | $2,762.50 |

**Attorney-Client Privileged Communication**

**Please send payment within 15 days of receiving this invoice**

**Please access our secure online payment portal at
https://taylorenglishbilling.com**

**Payment questions: 678-336-7258 - Kim Zaring
Billing questions: kzaring@taylorenglish.com**



**Taylor English Duma LLP** 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 **taylorenglish.com**

US District Court - Northern District of Georgia
c/o Al B. Hill
1600 Parkwood Circle
Suite 200
Atlanta, GA   30339

| | |
|---|---|
| Statement Date: | August 19, 2022 |
| Statement No. | 739635 |
| Account No. | 76031.0001 |
| Federal ID No. | 201310229 |

Re:   Statim Holdings - Counsel to Receiver

| | | |
|---|---|---|
| **PREVIOUS BALANCE BROUGHT FORWARD** | | $560.00 |
| 08/16/2022 | Wire Payment.  Thank you. Arjun GA | -560.00 |
| | **Balance Due.................................** | $0.00 |

**Attorney-Client Privileged Communication**

**Please send payment within 15 days of receiving this invoice**

**Please access our secure online payment portal at
https://taylorenglishbilling.com**

**Payment questions: 678-336-7258 - Kim Zaring
Billing questions: kzaring@taylorenglish.com**

US District Court - Northern District of Georgia                      Statement Date: 08/19/2022
c/o Al B. Hill                                                             Account No.      76031.0
1600 Parkwood Circle
Suite 200
Atlanta, GA   30339

## Cover Statement

### S T A T E M E N T   S U M M A R Y

| | Previous Balance | Fees | Expenses | Payments | Balance |
|---|---|---|---|---|---|
| 76031-0000 Statim Holdings - Activities of Receiver | | | | | |
| | 5,408.02 | 2,762.50 | 0.00 | -5,408.02 | $2,762.50 |
| 76031-0001 Statim Holdings - Counsel to Receiver | | | | | |
| | 560.00 | 0.00 | 0.00 | -560.00 | $0.00 |
| | 5,968.02 | 2,762.50 | 0.00 | -5,968.02 | $2,762.50 |

**Attorney-Client Privileged Communication**

**Please send payment within 15 days of receiving this invoice**

**Please access our secure online payment portal at
https://taylorenglishbilling.com**

**Payment questions: 678-336-7258 - Kim Zaring
Billing questions: kzaring@taylorenglish.com**

Statements Printed:                    2
Hours:                               6.50
Fees:                            2,762.50

# Continuum Legal Group LLP

5605 Glenridge Drive | Suite 600
Atlanta, Georgia 30342
Phone: 770-800-3518

# INVOICE

Invoice # 2189
Date: 08/11/2022
Due On: 08/26/2022

Al B. Hill
1600 Parkwood Cir., Suite 200
Atlanta, Georgia 30339

## Hill/00001

## Counsel to Receiver for Statim Holdings, LLC

| Date | Attorney | Notes | Quantity | Rate | Total |
|------|----------|-------|----------|------|-------|
| 07/11/2022 | Bill Leonard | Review emails from Ms. Murnahan, Mr. Sadow, and Ms. Poley regarding hearing on SEC's motion for sanctions; prepare email to Mr. Hill regarding same | 0.20 | $350.00 | $70.00 |
| 07/12/2022 | Bill Leonard | Review emails from Ms. Murnahan, Ms. Poley, and Mr. Sadow regarding hearing on SEC's motion for penalties and disgorgement | 0.10 | $350.00 | $35.00 |
| 07/14/2022 | Bill Leonard | Prepare for, travel to, and attend hearing on SEC's motion for sanctions against Meyer; conferences with Mr. Loomis and Ms. Murnahan; review minute entry on docket concerning hearing; prepare email to Mr. Hill regarding hearing and review response; multiple emails with Mr. Hill regarding conclusion of audit | 2.70 | $350.00 | $945.00 |
| 07/28/2022 | Bill Leonard | Review and revise quarterly report of receiver; multiple emails with Mr. Hill regarding same; respond to email from Ms. Murnahan regarding taxpayer ID for Statim; prepare email to Mr. Hill regarding same and review response; prepare email to Ms. Murnahan regarding same | 0.90 | $350.00 | $315.00 |

|  | Subtotal | $1,365.00 |
|--|----------|-----------|
|  | **Total** | **$1,365.00** |

## Statement of Account

| | Outstanding Balance | | New Charges | | Payments Received | | Total Amount Outstanding |
|---|---|---|---|---|---|---|---|
| ( | $2,310.00 | + | $1,365.00 | ) - ( | $0.00 | ) = | $3,675.00 |

| Account | Balance |
|---|---|
| IOLTA Balance | $0.00 |
| **Total Account Balance** | **$0.00** |

Please make all amounts payable to: Continuum Legal Group LLP

Send Wire/ACH Payments to
First Citizens Bank
Wire Routing # 053100300 | ACH Routing# 061191848
Bank Account# 009064118252

Payment is due 15 days from invoice date.

**Thank you for your continued trust in Continuum Legal Group LLP.**

# Continuum Legal Group LLP

5605 Glenridge Drive | Suite 600
Atlanta, Georgia 30342
Phone: 770-800-3518

# INVOICE

Invoice # 2372
Date: 08/19/2022
Due On: 09/03/2022

Al B. Hill
1600 Parkwood Cir., Suite 200
Atlanta, Georgia 30339

## Hill/00001

## Counsel to Receiver for Statim Holdings, LLC

| Date | Attorney | Notes | Quantity | Rate | Total |
|------|----------|-------|----------|------|-------|
| 08/10/2022 | Bill Leonard | Review order and final judgment against Meyer; prepare email to Mr. Hill regarding same | 0.40 | $350.00 | $140.00 |
| 08/12/2022 | Bill Leonard | Prepare final report and motion to close receivership; review past orders and other court filings for citations needed in brief; prepare email to Mr. Hill regarding same | 3.40 | $350.00 | $1,190.00 |
| 08/15/2022 | Bill Leonard | Revise final report and motion to close receivership; prepare proposed order; prepare emails to Mr. Hill regarding same | 1.40 | $350.00 | $490.00 |
| 08/16/2022 | Bill Leonard | Multiple emails with Mr. Hill regarding final report; review final financial statement and audit letter received from Mr. Hill | 0.40 | $350.00 | $140.00 |
| 08/17/2022 | Bill Leonard | Review and revise final report; multiple emails to and from Mr. Hill regarding outstanding issues | 1.00 | $350.00 | $350.00 |

| | | |
|---|---|---|
| **Subtotal** | **$2,310.00** |
| **Total** | **$2,310.00** |

## Statement of Account

| Outstanding Balance | New Charges | Payments Received | Total Amount Outstanding |
|---|---|---|---|
| (      $1,365.00 | +      $2,310.00 | ) - (      $0.00 | ) =      $3,675.00 |

| Account | Balance |
|---|---|
| IOLTA Balance | $0.00 |
| **Total Account Balance** | **$0.00** |

Please make all amounts payable to: Continuum Legal Group LLP

Send Wire/ACH Payments to
First Citizens Bank
Wire Routing # 053100300 | ACH Routing# 061191848
Bank Account# 009064118252

Payment is due 15 days from invoice date.

**Thank you for your continued trust in Continuum Legal Group LLP.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing

***Receiver's Final Report and Motion to Close Receivership with Brief in Support***

with the Clerk of the Court using the CM/ECF system, which will automatically

send e-mail notification of such filing to all attorneys of record.

This 19th day of August, 2022.

*/s/ William G. Leonard*
WILLIAM G. LEONARD
bleonard@ContinuumLG.com
